1
2
3
4
5

Ryosuke Togi (SBN 343851)
KANAME PARTNERS US, P.C.
17631 Fitch
Irvine, CA 92614
Phone & Fax: (949) 404-5515
Email: rtogi@kanamelaw.us

Attorney for Applicant Masafumi Inoue

6
7
8
9
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

11
12
13
14
15
16
17

| IN RE EX PARTE APPLICATION OF | Case No.: |
|---|---|
| MASAFUMI INOUE                    APPLICANT, | **DECLARATION OF MASAFUMI INOUE IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28 USC. § 1782**<br><br>Hearing Date: _____<br>Hearing Time: _____<br>Department: _____<br>Honorable: _____ |

18
19
20
21
22
23
24
25
26
27
28

I, Masafumi Inoue, declare as follows:

On December 14, 2024, my account with a total asset worth of 753,351.03 USDT (Tether), equivalent to $753,890 at the time, was frozen after a withdrawal restriction was imposed on the grounds of insider trading by a criminal group, which engaged in fraudulent activities posing as a cryptocurrency trading platform at nftmb.com (hereinafter referred to as "**NFTMB**"). As a result, the amount of 100.0980204 ETH, equivalent to $279,193 at the time, became inaccessible and was fraudulently obtained. I hereby provide a detailed statement below regarding my account opening with NFTMB, the method and details of transfers, and the facts leading to the freezing of my account.

## I.    Facts Leading to Opening an Account with NFTMB

1.    On September 13, 2024, I became acquainted with an individual identifying themself as Sachiko, a name of Japanese female, (hereinafter referred to as the "**Suspect**") through "Pairs," a Japanese dating and matchmaking app site operated by Eureka, Inc.

2.    On September 13, 2024, I was directed by the Suspect to "LINE," a messaging application operated by LINE Yahoo Corporation, where we began communicating.

3.    On September 18, 2024, the Suspect stated, "I am considering a serious relationship with you with marriage in mind, and hope to build a happy future together," and suggested me to share NFT (Non-Fungible Token) trading activities and to open an account with NFTMB.  At that time, the Suspect stated, "The profit from a NFT transaction is about at least 10% of the principal, and the returns from NFT trading are much higher than those from other types.  You can feel assured, as I trade under the guidance of my uncle who worked in Wall Street for twenty years and has extensive knowledge and analytical experience."

## II.    Method and Details of Transfers to NFTMB

4.    On September 18, 2024, the Suspect encouraged me to open an account with "Bitbank," a registered entity with the Japan Financial Services Agency, in order to transfer cryptocurrency to NFTMB, so I applied to open an account.

5.    On September 25, 2024, after completing the opening of my Bitbank account, I opened an account with NFTMB and transferred 0.02327836 ETH, equivalent to $63 at the time, from Bitbank to NFTMB.  On the same day, I received instructions from the Suspect on transaction procedures, and under the Suspect's direction, I placed trade orders and began trading at the price settings specified.  The operation method at NFTMB is that the transferred ETH (Ethereum) is automatically converted into USDT (Tether), and NFT tokens are purchased based on USDT.

6.    Following repeated instructions from the Suspect to add to the principal, I made a total of 22 transfers between October 2, 2024 and November 27, 2024 from domestic exchanges

registered with the Japan Financial Services Agency to NFTMB, which totaled 103.6529294 ETH and was equivalent to $289,696 at the time.

**III.    Facts Leading to NFTMB Freezing My Account**

7.     On December 3, 2024, the Suspect notified me that NFT trading will end, saying that, "According to my uncle, this favorable NFT market phase has ended.  Therefore, no more transactions will take place from today," and told me, "I intend to apply for a partial withdrawal of the principal and profits today, and withdraw the full amount tomorrow." **Exhibits A** and **B** attached hereto are excerpts of the communication records between the Suspect and me.

8.     On December 3, 2024, I applied to withdraw the total asset amount of 753,351.03 USDT, which was equivalent to $753,890 at the time, to NFTMB.

9.     On December 4, 2024, I received an explanation from NFTMB stating, "It has been determined that there is a suspicion of insider trading with your account.  As your account is currently in an abnormal status, your application for withdrawal has been rejected.  A security deposit is required to lift the abnormal status and clear the suspicion of insider trading related to your account.  Once the security deposit is paid, the abnormal status can be immediately resolved. The suspicion of insider trading can be immediately cleared.  Your application for withdrawal will be immediately processed.  Your deposited security can also be immediately returned to your account."

10.     On December 4, 2024, when I requested disclosure of the details regarding the security deposit, NFTMB explained, "The security deposit amount is 10% of your total assets. Your current total assets are 753,351 USDT.  Therefore, the security deposit amount was 753,351 USDT × 10% = 75,335 USDT (equivalent to $75,416 at the time)."

11.     On December 4, 2024, I asked NFTMB for clarification by inquiring, "Where in the user regulations are the specifications on security deposits?" and further questioned, "Why was no security deposit required for my previous three applications for withdrawal, yet is now being imposed when I am applying for a full withdrawal from my account?" To these questions, NFTMB

merely responded, "This is because the platform has determined that there is a suspicion of insider trading based on your account's previous transaction records.  Your payment of the security deposit is required to lift the abnormal status of the account and clear the suspicion of insider trading.  This is part of the platform's security mechanism," and did not provide any basis from the user regulations.

12.     On December 4, 2024, I asked NFTMB, "Which provision of Japanese law restricts this transaction?" to seek clarification on the legal basis in Japan for the insider trading suspicion.  In response, NFTMB stated, "This is a U.S.-based exchange.  Therefore, the regulations are different from those in Japan," and did not provide an answer based on Japanese law.

13.     On December 4, 2024, I asked NFTMB, "Which U.S. law restricts this transaction?" to seek clarification on the legal basis in the U.S. for the insider trading suspicion.  To this, NFTMB stated, "Each platform has its own regulations and security systems.  I have already informed you on how to lift the abnormal status of your account.  Therefore, please contact us after paying the security deposit," and did not provide an answer based on U.S. law as well.

14.     On December 4, 2024, I requested NFTMB to cancel my application for full withdrawal and asked, "Would it be acceptable to pay the security deposit when I apply for full withdrawal next time?" In response, NFTMB responded with an incoherent answer, stating, "Even after canceling your withdrawal, you will still need to pay the security deposit within one week."

15.     On December 4, 2024, I informed NFTMB of the legal interpretation publicly announced by the Japan Financial Services Agency that "insider trading does not apply to cryptocurrency transactions within Japan." In response, I was only provided the same response that does not cite any laws or regulations from NFTMB that stated, "This is the platform's security system.  Since the abnormal status of your account has not been resolved yet, we cannot approve applications for withdrawal of any amount.  Once the security deposit is paid, the abnormal status can be immediately lifted, and your application for withdrawal will be immediately processed.  Your security deposit paid can also be withdrawn immediately."

16.     On December 4, 2024, I requested an explanation regarding the security system upon stating to NFTMB that "users cannot use this exchange with confidence, as unclear reasons are being presented each time." The Company merely responded that "This is the platform's latest regulation and security system.  Once the security deposit is paid, the abnormal status of your account will be immediately lifted.  Your total assets can be successfully withdrawn immediately. There will be no other costs after that," and <u>did not provide any specific explanation on the security system whatsoever</u>.

17.     On December 11, 2024, I pointed out to NFTMB that, "Originally, the deadline for the security deposit should have been one week after the application for full withdrawal on December 4, 2024, which is December 11, 2024.  Why has the deadline changed to December 13, 2024?"  In response, NFTMB only provided a makeshift answer, stating, "December 13, 2024 is the final deadline for the platform's screening.  I merely informed you of the platform's screening result on December 4, 2024."  <u>It turned out that no such platform regulations exist to begin with and that decisions were made arbitrarily</u>.

18.     On December 11, 2024, I pointed out to NFTMB, "First of all, are you aware that registration with the Financial Services Agency is necessary if you are conducting cryptocurrency exchange business in Japan?  Conducting transactions in Japan using a Japanese-language platform qualifies NFTMB as an unregistered operator." In response, NFTMB replied, "There are many NFT futures trading platforms around the world, and because this is a U.S.-based NFT futures trading platform, registration with the Financial Services Agency in Japan is not necessary.  The regulations and security systems for NFT futures trading platforms and cryptocurrency trading platforms are also different."  Through this response, NFTMB shifted its line of business to a futures trading operator rather than a cryptocurrency exchange operator within Japan.

19.     On December 11, 2024, after informing NFTMB of the Japan Financial Services Agency's views, stating, "In Japan, futures trading operators are required to separately obtain authorization as financial futures trading businesses," I stated, "In any case, it has been proven that

NFTMB is an unregistered operator within Japan.  This is Japan, and when conducting business domestically, the laws of Japan naturally apply." In response, NFTMB replied, "This is a U.S. trading platform.  Therefore, we are not registered with the Japan Financial Services Agency.  The platform regulations and security system cannot be changed even through negotiation.  We will not answer the same questions repeatedly.  The final deadline for your payment of the security deposit is December 13, 2024.  This is the final notice." This confirmed that NFTMB is prioritizing its own arbitrary interpretation of its platform over Japanese and U.S. laws, and revealed the fact that it is engaging in illegal activities.

20.    On December 11, 2024, I stated to NFTMB, "Could you provide me NFTMB's location and information on who operates it?  This will allow me to file a lawsuit with the competent court.  If NFTMB is legitimate, you should able to officially disclose this.  The reason you cannot is because NFTMB is operating illegally," but I received no response to this.

21.    On December 11, 2024, I pointed out NFTMB's malicious and illegal acts through misrepresentation to NFTMB, stating, "Who in the world would deposit funds without knowing the criteria for the security deposit?  Although regulations and rules become effective by officially disclosing them, why is NFTMB unable to disclose them?  Despite not disclosing strict regulations and rules, freezing my account all of a sudden because I cannot agree to them constitutes a malicious and illegal act.  There is no mention of this whatsoever in NFTMB's user agreement.  The Company itself is violating its agreement with users.  And while NFTMB's interpretation of 'insider trading' is incomprehensible, why did NFTMB allow transactions to continue in the first place despite the suspicion of insider trading?" I also claimed this to be a fraudulent scheme, stating, "It is probably a malicious system designed to have users continue trading until a high asset worths are reached, so that you can collect a large security deposit of 10% of the total assets," but NFTMB did not provide any defense.

22.     On December 14, 2024, I received a notice from NFTMB stating, "Your account is currently frozen because you did not pay the security deposit within the deadline." <u>From that day onward, I lost contact with NFTMB and the Suspect</u>.

**IV.     Identification of Peg Tech Inc**

23.     On February 7, 2025, I investigated the subject domain (nftmb.com) of the NFTMB-operated website through WHOIS, a private server monitoring service, and has found that the server management company for the said domain is PEG TEC INC that has its address at 2805 Mission College Blvd, Santa Clara, CA 95054. *See* **Exhibits C** and **D**.  I further investigated the company name through Californis Secretary of State and found out that it is a corporation registered in California. *See* **Exhibit E**.

24.     WHOIS is a protocol and database system for storing and publishing domain name and IP address registration information, which enables users to search and reference domain name and IP address registration information on the Internet. It is required by ICANN (Internet Corporation for Assigned Names and Numbers), a non-profit public interest international organization managing domain names and IP addresses on the Internet, that information be provided to WHOIS when a domain or IP address is acquired.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 14, 2025 in Tokyo, Japan.


*Masafumi Inoue*
Masafumi Inoue
Applicant

# Exhibit A























# Exhibit B











21:33

< NFTMB

Masa  2024年12月4日 (水)
今回出金口座は入金口座とは別の口座を選択
しているのに、なぜマネーロンダリングの…

あなたの口座には現在インサイダー取
引の疑いがありますが、マネーローン
ダリングの疑いはありません
                                    11:06

Masa
こちらと同じ案件ですか？

もちろん違います
これとは全く関係がありません
                                    11:07

> マネーロンダリングの疑いがなけれ
> ば、なぜ出金できない
> 投資家であれば、分析の上で成果を上
> げるのが仕事であるだろう
> 使用している取引所はNFTMTよりも
> 厳格な個人審査があり、こちらの身分
> は金融機関関係者でないことは把握さ
> れている
> インサイダーに関わっている事実はこ
> ちらの取引所から発言することはあり
> えない
> 既読
> 11:12

> 過去の資料は全て保存しているから警
> 視庁及び弁護士に相談する
> 既読
> 11:13

> 過去の取引履歴を見てもらえれば、大
> 幅な損失を出しているから、むしろイ
> ンサイダーの疑義は一切ないだろう
> 当社は意味不明な回答ですね
> 既読
> 11:22

あなたの取引はNFT口座で行われて
いるため、インサイダー取引の疑いが
かけられているのもあなたのNFT口
座です、これはプラットフォームがあ

Aa









21:37

NFTMB

2024 年 12 月 11 日 (水)

**NFTMB**
おはよう プラットフォームではあなたが今日一度出金申請をしていることが検出され…

この段階で当社がいうインサイダー取引の疑いがなかったにもかかわらず、なぜ全額出金する際に急にインサイダーの疑いをかけられるのでしょうか？一部出金であれば問題がないとうことを意味しています
まず、金融庁の見解として、仮想通貨においてインサイダー取引は値しません
昨日、出金申請を行いましたが、承認をお願いします

既読
11:41

これはプラットフォームのセキュリティ制度です
あなたの口座の異常状態がまだ解除されていないため、いかなる金額の出金申請も承認されることはできません
保証金入金後、口座の異常状態はすぐに解除できます、出金申請はすぐに通ることができます
入金した保証金もすぐに出金に成功します

12:02

プラットフォームのセキュリティ制度を開示してもらってもいいですか？
開示してもらわない限り、その都度不明瞭な理由を突きつけられ、利用者が安心して利用できない

既読
12:05

これはプラットフォームの最新の規定とセキュリティ制度です
保証金入金後、口座の異常状態はすぐに解除できます、総資産はすぐに出金

Aa

21:37

< NFTMB

2024年12月11日(水)　12:02
ます

プラットフォームのセキュリティ制度
を開示してもらってもいいですか?
開示してもらわない限り、その都度不
明瞭な理由を突きつけられ、利用者が
安心して利用できない
既読 12:05

これはプラットフォームの最新の規定
とセキュリティ制度です
保証金入金後、口座の異常状態はすぐ
に解除できます、総資産はすぐに出金
に成功できます、その後にはその他の
費用はありません
12:18

NFTMB
あなたの取引はNFT口座で行われているた
め、インサイダー取引の疑いがかけられて…

このメッセージの時点では入金締切が
1週間以内の12/11であり、その後の
やりとりで12/13に変動した
そもそもプラットフォームの規定など
存在せず、あなたが勝手に決めている
だけだろう

まず、日本国内で暗号資産交換業を行
う場合、金融庁登録の必要があること
はご存知ですか?
当社は日本語版で日本国内で取引を行
っていることは無登録業者に値します
よ
既読 12:30

https://www.fsa.go.jp/policy/
virtual_currency02/index.html

Aa



21:38

< NFTMB

2024年12月11日 (水)

これはプラットフォームによる審査の
最終期限日です
私はただプラットフォームの審査結果
を告知しただけです
世界中には多くのNFTの先物取引プ
ラットフォームがありますが、これは
アメリカのNFTの先物取引プラット
フォームなので、日本の金融庁で登録
する必要はありません
NFTの先物取引プラットフォームと
仮想通貨の取引プラットフォームの規
定とセキュリティ制度も異なります
12:42

その見解であれば、再度金融庁へ確認
する
分かり次第連絡する
既読
12:44

世界中には多くのNFTの先物取引プ
ラットフォームがあります
各取引プラットフォームの規定とセキ
ュリティ制度もそれぞれ異なります
だから金融庁に調査と確認を行うこと
は全く意味がないことです
プラットフォームの規定とセキュリテ
ィ制度は交渉によって変更できません
今週の金曜日が最終的な保証金入金期
限です
今週の金曜日に保証金を入金しない場
合、あなたの口座は凍結されます
口座が凍結された後、たとえ保証金を
入金しても口座の凍結状態を解除する
ことはできません
12:57

世界中の話をされますが、ここは日本
国内であり、日本国内で営業を行う場
合、当然ながら日本の法律が適用され
ます

Aa



21:38

‹ NFTMB

世界中の話をされますが、ここは日本
国内であり、日本国内で営業を行う場
合、当然ながら日本の法律が適用され
ます

金融庁の回答
日本国内において先物取引取扱業者は
別途、金融先物取引業の許可が必要で
すよ

いずれにせよ、当社は日本国内におい
ては無登録業者であるということ

当社が交渉に応じることなく凍結され
た場合、金融庁・警視庁 (米国への捜
査協力依頼)・米国弁護士へ被害届け
を提出するだけです

全額出金を求めているわけではなく、
一部出金で譲歩していることを理解し
た方が良いですよ

当社の今後の営業売上に比べれば、む
しろ影響がない金額であるだろう

しっかりと吟味した方が良いと思いま
すよ

https://www.ffaj.or.jp/members/
document/

📄 登録業者一覧 (店頭 FX 取引、取引所 F…
わたしたちは、めざましく発展する金融先物
市場において、金融先物取引業の健全な発…

既読
13:14

これはアメリカの取引プラットフォー
ムです
だから日本の金融庁に登録していませ



21:38

< NFTMB

2024年12月11日(水)

これはアメリカの取引プラットフォームです
だから日本の金融庁に登録していません
私は既にプラットフォームの規定とセキュリティ制度を告知しました
プラットフォームの規定とセキュリティ制度は交渉によっても変更できません
私も同じ質問に繰り返して答えることはありません
今週の金曜日が最終的な保証金入金期限です
これが最後のお知らせです

13:30

最終警告
交渉が応じることができないのであれば、法的措置を講じます
あらゆる証拠を全て保有しているので、立件されれば重大案件であり、重罪に値しますよ
慎重な判断を求めます

既読
13:36

プラットフォームの規定とセキュリティ制度は交渉によって変更できません
これが最終的な回答です

13:45

2024年12月12日(木)

最終通告

明日この金額が指定口座に入金されない場合、金融庁・警視庁・国税庁へ関係資料を提出し、被害届けを提出する

捜査が始まれば、米国のSECに日本の関係者が意見を交わすことになる

Aa



21:40

**NFTMB**

2024年12月12日(木)

そしたら訴訟になるだろうから、当社の所在地及び運営者を教えてもらえる
これで管轄の裁判所へ提出することができる
当社が正規というのであれば、公式に公開できるはずです
公開できないのは非合法的にやっているからです

既読 18:49

SEC を甘く見ない方が良いよ
当社がいう世界中に影響を与えますよ
https://ja.wikipedia.org/wiki/%E7%B1%B3%E5%9B%BD%E8%A8%BC%E5%88%B8%E5%8F%96%E5%BC%95%E5%A7%94%E5%93%A1%E4%BC%9A

**米国証券取引委員会 - Wikipedia**
コンテンツにスキップ 目次 サイドバーに移動 非表示 ページ先頭 1 概要...

既読 18:50

こちらは交渉の余地をまだ残しているから、明日までに適切な判断をしてください

既読 18:56

もう何度も言っています
プラットフォームの規定とセキュリティ制度は交渉によって変更できません
明日が最終的な保証金入金期限です
明日に保証金を入金しない場合、あな



21:40

NFTMB

返信はよ させろ    22:21

2024年12月12日(木)

こちらはあらゆる視点から質問をしているにもかかわらず、当社は同一回答しかしていないので時間は要していないはずです
入金保証金の基準がわからないのに、追加で入金する者がこの世にどこに存在するのですか
規定やルールというものは、公式に公開されて効力が発揮するのに、なぜ当社はそれを開示できないのですか
厳格な規定やルールを開示していないのに、それに同意できなければいきなり口座凍結するのは悪質な違法行為ですよ
当社のユーザー規約には一切記載がありません
当社自体が利用者との規約違反なんですよ

そもそも当社のいうインサイダーの解釈が意味不明なのですが、当社のいうインサイダーの疑いがあるにもかかわらず、取引をなぜ継続させたのですか

高額な資産になるまで取引をさせれば、総資産の10％という高額な入金保証金を徴収することができるという悪質な仕組みなのでしょう

当社は以上の論点をお伝えしてもまだ交渉に応じませんか
あなたが交渉人でなければ、交渉できる人に代わってください
それであれば、あなたに時間を割くことはしない
明日までに賢明な判断と合法な手続きを求めます

既読
23:01

# Exhibit C

**CMAN**

サーバー監視/ネットワーク監視サービス
http://www.cman.jp/network/

■

■

© cman.jp > サーバ監視TOP > サーバメンテ支援 > ドメイン/IP検索結果

## ⊞ WHOIS情報検索 結果

### ⊞  入力情報

| 対象ドメイン または IPアドレス |
|---|
| nftmb.com |
| **入力の逆引き または 正引き** |
| 107.148.46.68 |
| **利用者情報** |
| IPアドレス ： 86.48.13.99<br>ご利用時間 ： 2025/02/07 09:32:51 |

◀ 前のページへ戻る

広告

| このホスト確認 | ▶ PING応答 | ▶ Port開放 | ▶ DNS情報 | ▶ SSL確認 | ▶ HTTP確認 |
|---|---|---|---|---|---|

■

### ⊞  確認結果

結果は保証しておりません。結果についてのお問い合わせもお受けしておりません。

ドメインのWHOIS情報は、各ドメイン管理ページで確認して頂く様に変更となりました。

以下よりご確認ください。

| | |
|---|---|
| 対象ドメイン | nftmb.com |
| トップドメイン | com （IANAトップドメイン情報）<br>commercial　商用 |
| 情報公開URL<br>(Whois) | https://webwhois.verisign.com/webwhois-ui/index.jsp |
| 管理先URL | https://www.verisign.com/ |
| WHOISサーバ | whois.verisign-grs.com |

※上記URLの画面については当社管理外となりますので、操作方法や見方など一切のお問い合わせにはお答えできません。ご了承のうえご利用ください。

◁ 前のページへ戻る

| cman.jp内 関連ページ |
|---|
| ◉ ドメイン名・ホスト名・FQDNとは？ |
| ◉ URLとは？ |
| ◉ ドメイン/IPアドレス サーチ 【whois情報検索】 |
| ◉ ドメイン一覧 【 whoisサーバ一覧 】 |
| ◉ 日本語ドメイン/Punycode変換 |
| ◉ 日本語ドメイン/Punycodeとは？ |
| ◉ htaccessによるアクセス制限(IPアドレス・ホスト名) |

▦ トップ

▦ サーバ監視サービス

▦ サーバメンテ支援

| ▦ IPアドレス確認 | ▦ ドメイン/IP検索 | ▦ ポートチェック |
| ▦ SSLチェック | ▦ DNSチェック | ▦ PINGチェック |
| ▦ HTTPチェック | ▦ 日本語ドメイン変換 | ▦ IPアドレス一覧 |
| ▦ ドメイン一覧 | ▦ WEB会議等の確認 | |

▦ 用語集

▦ 監視操作マニュアル

▦ よくあるご質問

▦ 障害・メンテナンス

当社他サイトUpDate

▦ QRコード作成
▦ HPパーツ作成

広告



このページのURL

| ▦ よくあるご質問 | ▦ お知らせ |
| ▦ 当サイトについて | ▦ お問い合わせ |
| ▦ cman.jp | ▦ QRコード作成【無料】 |
| ▦ 画像加工【無料】 | ▦ htaccess作成【無料】 |
| ▦ WEB便利ノート【無料】 | ▦ IT比較実験【無料】 |

▦ 文字/ボタンのイメージ画像作成【無料】　　▦ アイコン素材【無料】
▦ WEBページ作成リファレンス【無料】
▦ ホームページのパーツ作成【無料】

🖥 ❯ パソコン                                            運営：CMAN 株式会社シーマン

# Exhibit D

**CMAN**

サーバー監視/ネットワーク監視サービス
http://www.cman.jp/network/



C cman.jp > サーバ監視TOP > サーバメンテ支援 > ドメイン/IP検索結果

### 田 WHOIS情報検索 結果

#### 田 入力情報

| 対象ドメイン または IPアドレス |
|---|
| 107.148.46.68 |

| 入力の逆引き または 正引き |
|---|
| |

| 利用者情報 |
|---|
| IPアドレス ： 86.48.13.99<br>ご利用時間 ： 2025/02/07 09:27:00 |

◀ 前のページへ戻る

広告

| このホスト確認 | ▶ PING応答 | ▶ Port開放 | ▶ DNS情報 | ▶ SSL確認 | ▶ HTTP確認 |
|---|---|---|---|---|---|



#### 田 確認結果

結果は保証しておりません。結果についてのお問い合わせもお受けしておりません。

以下の情報は公開されているWHOIS情報を機械的に表示しています。情報は当社の管理では

ございませんのでご注意ください。

| 問合せ先（Whoisサーバ） |
| --- |

## whois.arin.net （北アメリカおよびサブサハラ・アフリカ）

該当IPアドレスの登録情報照会先(arin)は、照会に制限が行われることがあります。
照会結果内のリンクが表示される場合、クリックで詳細情報が表示されることがあります。

| 結果 |
| --- |

```
#
# ARIN WHOIS data and services are subject to the Terms of Use
# available at: https://www.arin.net/resources/registry/whois/tou/
#
# If you see inaccuracies in the results, please report at
# https://www.arin.net/resources/registry/whois/inaccuracy_reporting/
#
# Copyright 1997-2025, American Registry for Internet Numbers, Ltd.
#



# start

NetRange:       107.148.0.0 - 107.149.255.255
CIDR:           107.148.0.0/15 (マスク範囲)
NetName:        PT-82-10
NetHandle:      NET-107-148-0-0-1
Parent:         NET107 (NET-107-0-0-0-0)
NetType:        Direct Allocation
OriginAS:       AS398478, AS398993, AS399195, AS54600, AS398823
Organization:   PEG TECH INC (PT-82)
RegDate:        2013-11-08
Updated:        2024-07-17
Comment:        Geofeed  https://www.raksmart.com/ip2location.csv
Ref:            https://rdap.arin.net/registry/ip/107.148.0.0


OrgName:        PEG TECH INC
OrgId:          PT-82
Address:        2805 Mission College Blvd
City:           Santa Clara
```

```
StateProv:     CA
PostalCode:    95054
Country:       US      →    （アメリカ合衆国）
RegDate:       2012-03-27
Updated:       2024-11-25
Ref:           https://rdap.arin.net/registry/entity/PT-82


OrgNOCHandle: NOC12550-ARIN
OrgNOCName:   NOC
OrgNOCPhone:  +1-408-692-5581
OrgNOCEmail:  noc@petaexpress.com
OrgNOCRef:    https://rdap.arin.net/registry/entity/NOC12550-ARIN

OrgTechHandle: NOC12550-ARIN
OrgTechName:   NOC
OrgTechPhone:  +1-408-692-5581
OrgTechEmail:  noc@petaexpress.com
OrgTechRef:    https://rdap.arin.net/registry/entity/NOC12550-ARIN

OrgAbuseHandle: ABUSE3497-ARIN
OrgAbuseName:   Abuse
OrgAbusePhone:  +1-408-692-5581
OrgAbuseEmail:  abuse@petaexpress.com
OrgAbuseRef:    https://rdap.arin.net/registry/entity/ABUSE3497-ARIN

# end


# start

NetRange:     107.148.46.0 - 107.148.47.255
CIDR:         107.148.46.0/23 （マスク範囲）
NetName:      PEG-HK-202405
NetHandle:    NET-107-148-46-0-1
Parent:       PT-82-10 (NET-107-148-0-0-1)
NetType:      Reassigned
OriginAS:     AS398478
Customer:     PEG-HK (C10854120)
RegDate:      2024-05-24
Updated:      2024-05-24
Ref:          https://rdap.arin.net/registry/ip/107.148.46.0
```

```
CustName:       PEG-HK
Address:        2 Dai Hei St, Tai Po Industrial Estate
City:           Hong Kong
StateProv:
PostalCode:
Country:        CN      →      (中国)
RegDate:        2024-05-24
Updated:        2024-05-24
Ref:            https://rdap.arin.net/registry/entity/C10854120


OrgNOCHandle: NOC12550-ARIN
OrgNOCName:   NOC
OrgNOCPhone:  +1-408-692-5581
OrgNOCEmail:  noc@petaexpress.com
OrgNOCRef:    https://rdap.arin.net/registry/entity/NOC12550-ARIN


OrgTechHandle: NOC12550-ARIN
OrgTechName:   NOC
OrgTechPhone:  +1-408-692-5581
OrgTechEmail:  noc@petaexpress.com
OrgTechRef:    https://rdap.arin.net/registry/entity/NOC12550-ARIN


OrgAbuseHandle: ABUSE3497-ARIN
OrgAbuseName:   Abuse
OrgAbusePhone:  +1-408-692-5581
OrgAbuseEmail:  abuse@petaexpress.com
OrgAbuseRef:    https://rdap.arin.net/registry/entity/ABUSE3497-ARIN


# end




#
# ARIN WHOIS data and services are subject to the Terms of Use
# available at: https://www.arin.net/resources/registry/whois/tou/
#
# If you see inaccuracies in the results, please report at
# https://www.arin.net/resources/registry/whois/inaccuracy_reporting/
#
# Copyright 1997-2025, American Registry for Internet Numbers, Ltd.
#
```

**管理団体URL**

詳しくは、下記管理組織のWhoisにてご確認ください。
http://www.arin.net/

当社管理の情報ではございません。公開されているWHOIS情報となりますので、見方や内容についてお問い合わせいただいても対応することはできません。各管理団体URLで詳細はご確認ください。

◀ 前のページへ戻る

| cman.jp内 関連ページ |
|---|
| ◉ 使用中のIPアドレス確認 |
| ◉ ドメイン/IPアドレス サーチ 【whois情報検索】 |
| ◉ IPアドレスとは? |
| ◉ サブネットマスクとは? |
| ◉ ルータとは?選び方は? |
| ◉ サブネットマスク計算 |
| ◉ htaccessによるアクセス制限(IPアドレス・ホスト名) |
| ◉ ドメイン名・ホスト名・FQDNとは? |

▥ トップ

▥ サーバ監視サービス

▥ サーバメンテ支援
　▥ IPアドレス確認　　　▥ ドメイン/IP検索　　　▥ ポートチェック
　▥ SSLチェック　　　　▥ DNSチェック　　　　▥ PINGチェック
　▥ HTTPチェック　　　▥ 日本語ドメイン変換　▥ IPアドレス一覧
　▥ ドメイン一覧　　　　▥ WEB会議等の確認

▥ 用語集

▥ 監視操作マニュアル

▥ よくあるご質問

| ▦ 障害・メンテナンス |
| --- |
| 当社他サイトUpDate |
| ▦ QRコード作成 |
| ▦ HPパーツ作成 |

広告



このページのURL

| ▦ よくあるご質問 | ▦ お知らせ |
| --- | --- |
| ▦ 当サイトについて | ▦ お問い合わせ |

▦ cman.jp                  ▦ QRコード作成【無料】
▦ 画像加工【無料】          ▦ htaccess作成【無料】
▦ WEB便利ノート【無料】     ▦ IT比較実験【無料】
▦ 文字/ボタンのイメージ画像作成【無料】    ▦ アイコン素材【無料】
▦ WEBページ作成リファレンス【無料】
▦ ホームページのパーツ作成【無料】

🖥 ❯ パソコン                                    運営：CMAN 株式会社シーマン

# Exhibit E

BA20250456246



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**CORPORATION**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

<table>
<tr><td colspan="2">For Office Use Only</td></tr>
<tr><td colspan="2"><strong>-FILED-</strong></td></tr>
<tr><td>File No.: BA20250456246</td></tr>
<tr><td>Date Filed: 3/3/2025</td></tr>
</table>

B3489-9171 03/03/2025 3:04 PM Received by California Secretary of State

---

**Entity Details**

| | |
|---|---|
| Corporation Name | PEG TECH INC. |
| Entity No. | 3452099 |
| Formed In | CALIFORNIA |

**Street Address of Principal Office of Corporation**

| | |
|---|---|
| Principal Address | 2805 MISSION COLLEGE BLVD<br>SANTA CLARA, CA 95054 |

**Mailing Address of Corporation**

| | |
|---|---|
| Mailing Address | 2805 MISSION COLLEGE BLVD<br>SANTA CLARA, CA 95054 |
| Attention | |

**Street Address of California Office of Corporation**

| | |
|---|---|
| Street Address of California Office | 2805 MISSION COLLEGE BLVD<br>SANTA CLARA, CA 95054 |

**Officers**

| Officer Name | Officer Address | Position(s) |
|---|---|---|
| WEI ZHANG | 2805 MISSION COLLEGE BLVD<br>SANTA CLARA, CA 95054 | Chief Executive Officer, Secretary, Chief Financial Officer |

**Additional Officers**

| Officer Name | Officer Address | Position | Stated Position |
|---|---|---|---|
| None Entered | | | |

**Directors**

| Director Name | Director Address |
|---|---|
| ✚ Wei Zhang | 2805 MISSION COLLEGE BLVD<br>SANTA CLARA, CA 95054 |

The number of vacancies on Board of Directors is: 2

**Agent for Service of Process**

| | |
|---|---|
| California Registered Corporate Agent (1505) | INCORP SERVICES, INC.<br>Registered Corporate 1505 Agent |

**Type of Business**

| | |
|---|---|
| Type of Business | CLOUD SERVICES, HOSTING SERVICES |

**Email Notifications**

| | |
|---|---|
| Opt-in Email Notifications | No, I do NOT want to receive entity notifications via email. I prefer notifications by USPS mail. |

**Labor Judgment**

No Officer or Director of this Corporation has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

Electronic Signature

☒ By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

_David zhang_
Signature

_03/03/2025_
Date

B3489-9172 03/03/2025 3:04 PM Received by California Secretary of State